IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTONIA ROYBAL-MACK,
as Personal Representative of the
Wrongful Death Estate of
KORI LYNN WOODS,

    Plaintiff,

vs.                                                                   No. 17-CV-552-WJ-KK

NEW MEXICO DEPARTMENT OF
PUBLIC SAFETY, OFFICER
MARK QUINTANA and OFFICER
DIEGO MENDOZA, individually
and in their official capacities, and
JOHN and JANE DOES #1-10,

    Defendants.

## MEMORANDUM OPINION AND ORDER

## GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS II, III, IV AND V

THIS MATTER comes before the Court upon a Motion to Dismiss Counts II, III, IV and V filed on May 19, 2017 by Defendants New Mexico Department of Public Safety, Officer Mark Quintana and Officer Diego Mendoza ("Defendants") **(Doc. 6)**. Having reviewed the relevant pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is granted.

## BACKGROUND

Plaintiff's claims arise from the Defendant Officer's high-speed pursuit of a vehicle operated by Kyle Mawhorter ("Mawhorter"), in which Kori Lynn Woods was a passenger and which resulted in a single-vehicle collision killing Ms. Woods.

The facts in the Complaint are summed up in the Joint Status Report (Doc. 13). In November 2016 near Clovis, New Mexico, State Police Officer Quintana initiated a traffic stop for speeding on a vehicle operated by Mawhorter in which Ms. Woods was riding as a passenger. Officer Quintana activated his patrol unit's emergency equipment directing Mawhorter to stop the vehicle on the shoulder of the highway. Mawhorter failed to stop and Officer Quintana pursued Mawhorter (at speeds, according to Defendants, close to 100 m.p.h.) along US 70 traveling northbound. Officer Mendoza of the New Mexico State Police was also patrolling that stretch of the highway and was dispatched to assist Officer Quintana. Both police cruisers were using their overhead emergency lights and sirens, and recorded the chase on their dash-cam videos. Defendants' version of events is that at one point Mawhorter deliberately crossed into the southbound lanes of US 70 and began traveling northbound at speeds of 90-100 mph against oncoming traffic, causing the southbound vehicles to swerve in order to avoid being hit. The officers therefore decided to continue their pursuit of the vehicle for public safety reasons.

About five minutes into the pursuit, Officer Mendoza attempted a Pursuit Intervention Technique ("PIT") maneuver on Mawhorter's vehicle. The first PIT maneuver was unsuccessful, but the second one brought Mawhorter's vehicle to a stop. However, after stopping, Mawhorter reversed his car and began traveling northbound on US 70 again. According to Plaintiff's version, Officer Mendoza advised dispatch at this time that there was a female passenger (Ms. Woods) in Mawhorter's vehicle. Officer Quintana attempted a third unsuccessful PIT maneuver when Mawhorter began traveling west on Brady Avenue in Clovis, N.M. The pursuit continued 12 miles on US 70 northbound until Mawhorter lost control of his vehicle crashing into a metal fence at the intersection of W. Brady Ave. and S. Hull St. in Clovis. Mawhorter fled the vehicle on foot but was eventually found in a field and ultimately pled guilty

to various felony charges stemming from the accident. Kori Lynn Woods was pronounced dead at the scene.[1]

On March 31, 2017, Plaintiff as the personal representative of Ms. Woods' estate, filed a five-count complaint in the Second Judicial District Court in Bernalillo County, asserting the following civil rights and state law tort claims:

> Count I – Civil rights violations under §1983 (Fourth and Fourteenth Amendments);
>
> Count II – Violations of the New Mexico Tort Claims Act, NMSA 1978 41-4-12 and under the New Mexico Law Enforcement Safe Pursuit Act, NMSA 1978, §29-20-1;
>
> Count III – Negligent hiring, Training, Supervision and Retention;
>
> Count IV – Respondeat Superior; and
>
> Count V – Breach of duty under the New Mexico Wrongful Death Act, NMSA 1978, §41-2-1 et seq.

Defendants removed the case to federal court on May 15, 2017 and in this motion seek dismissal of Counts II, III, IV and V, all of them state claims.[2]

## DISCUSSION

Defendants contend that Counts II, III, IV and V of the Complaint are redundant and attempt in various ways to state a claim for negligence resulting in the wrongful death of the decedent pursuant to NMSA 41-4-12 of the New Mexico Tort Claims Act ("Tort Claims Act"). They argue that Plaintiff has not alleged an essential element of such a claim, namely the

---

[1] The Complaint states that Ms. Woods was "pronounced dead at the scene of the crash." Doc. 1-1, ¶22. The Joint Status Report states that Ms. Woods "suffered catastrophic injuries and was pronounced dead at the scene." Doc. 13 (Defendants' Contentions) at 5. There is no additional information relating to the cause of Ms. Woods' death, and the Court assumes that Ms. Wood died as a result of the vehicle crashing into the fence.

[2] In their reply at pages 1-5, Defendants take a shot at Plaintiff's Fourteenth Amendment claim in Count I, suggesting that the alleged facts do not support a finding that the conduct of Defendant officers rose to the requisite level of deliberate indifference. However, the Court does not intend to address whether Count I survives Rule 12(b)(6) for two reasons. First, Defendants' motion requests dismissal of only Counts II, III, IV and V. Second, Defendant raises this argument for the first time in the reply and so the Court need not consider it.

commission of one of the statutorily-enumerated, intentional torts in that provision, and therefore Plaintiff fails to state a claim upon which relief can be granted under Fed.R.Civ.P.12(b)(6).

To survive a motion to dismiss, Stein's complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (*"Iqbal"*). As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (*"Twombly"*). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

## I. Tort Claims Act (Count II)

The Tort Claims Act preserves sovereign immunity against tort claims for state governmental entities and public employees acting in the scope of their duties, except as specifically waived. *Fernandez v. Mora-San Miguel Elec. Co-op., Inc.*, 462 F.3d 1244, 1250 (10th Cir. 2006); *College Savings Bank v. Fl. Prepaid Postsecondary Education Expense Bd.*, U.S. 527, 666, 675 (1999) (a state's sovereign immunity precludes suits against a state or its employees except as specified where immunity has been waived). The issue of governmental immunity is jurisdictional, *Spray v. City of Albuquerque,* 94 N.M. 199, 608 P.2d 511 (1980), and, as such, may be raised by the parties at any time or by the court on its own motion. *Begay v. State*, 723 P.2d 252, 255, 104 N.M. 483, 486 (N.M.App.,1985).

Section 41-4-4 is the provision in the Tort Claims Act which grants immunity to a governmental entity and any public employee "while acting within the scope of duty." The same section also provides for waivers of this immunity, for example as provided for in Sections 41-4-5 through 41-4-12. In Count I of the Complaint, Plaintiff alleges violations of §41-4-12 of the Tort Claims Act, which waives immunity as to liability for wrongful death:

> resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

§ 41-4-12 (Liability; law enforcement officers). However, under Section 41–4–12, immunity is not waived for negligence standing alone. *See Bober v. New Mexico State Fair*, 111 N.M. 644, 654, 808 P.2d 614, 624 (1991) (while §41-4-12 waives immunity for negligence of a law enforcement officer or agency that caused one of the listed torts, "no case has held that simple negligence in the performance of a law enforcement officer's duty amounts to commission of one of the torts listed in the section." Thus, a law enforcement officer need not be the direct cause of injury to trigger a waiver of immunity under § 41–4–12. *See Lessen v. City of Albuquerque*, 187 P.3d 179, 186, 144 N.M. 314, 321 (N.M.App.,2008); *Schear v. Bd. Of County Comm'rs,* 101 N.M. 671 (1984) (officer's alleged negligence in failing to respond to a call requesting assistance with a crime in progress that caused plaintiff to be raped by a third party, i.e., a battery). At least with respect to the torts enumerated in §41-4-12, allegations of negligence are appropriate only to the extent that a law enforcement officer's negligence is alleged to have caused a third party to commit one of the specified intentional torts.[3] Even if a third party is the direct cause of an injury, the immunity granted by § 41–4–4(A) is waived if a plaintiff "demonstrate[s] that the

---

[3] *See also Methola v. Eddy County*, 95 N.M. 329 (1980) (officers whose alleged negligence proximately had caused third-party inmates to commit an assault on plaintiffs). *Milliron v. Cty. Of San Juan*, 2016-NMCA-096, 384 P.3d 1089 (citing *Blea v. City of Espanola*, 1994-NMCA-008, ¶ 14, 117 N.M. 217, 870 P.2d 755).

5

defendants were law enforcement officers acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in [Section 41-4-12] or a deprivation of a right secured by law." *Id.*

A. <u>Negligence of Defendant Officers</u>

Plaintiff acknowledges that mere negligence alone of a law enforcement officer is insufficient to waive the tort immunity granted by Section 41-4-4(A) (Doc. 7 at 5), yet insists that in this case, negligence *is* enough to state a claim because the Defendant officers caused Mawhorter to commit the intentional torts of assault, false imprisonment and battery.

Plaintiff has two problems in advancing this argument. The most obvious problem is that the intentional torts of assault, battery or false imprisonment are not mentioned anywhere in the Complaint. Instead, the Complaint alleges that Defendants "breached their duty" either to properly supervise and train the Defendant officers, and that the officers breached their duty as well "by engaging in unnecessary and inherently dangerous high speed pursuit and 3 PIT maneuvers, which in turn caused Mawhorter to conduct himself in an unsafe and unreasonable manner as he fled from [the officers." Compl., ¶¶32 & 37. The Complaint also states that Mawhorter drove his vehicle "in an unsafe and unreasonable manner" and that he drove "erratically and dangerously" (Compl., 37 & 65). These allegations describe negligent or even reckless conduct but they do not sufficiently or plausibly allege any of the intentional tortious acts which are listed in §41-4-12.

Second, the facts in this case even when taken as true, do not plausibly lend themselves to acts of assault, battery or false imprisonment by Mawhorter. The assault and battery statutes require intentional acts, not negligence. *See* N.M. Stat. Ann. § 30–3–4 ("Battery is the unlawful, *intentional* touching or application of force to the person of another, when done in a rude,

6

insolent or angry manner.") (emphasis added).[4]  An assault under New Mexico law requires an act, threat, or menacing conduct which causes the plaintiff to reasonably believe she is in danger of receiving an immediate battery.  *See* N.M.S.A. § 30-3-1; *see also State v. Ortega*, 113 N.M. 437,827 P.2d 152, 155 (N.M. Ct. App. 1992).  A battery under New Mexico law requires an unlawful, harmful, intentional, or offensive touching of another.  *Id.; see also Chavez v. Thomas & Betts Corp*. 396 F.3d 1088 (10th Cir. 2005). The intent required to commit battery extends only to the physical touching at issue and not to the resulting harm.  *Milliron v. County of San Juan*, 384 P.3d 1089, 1095 (N.M.App., 2016).

Similarly, false imprisonment also requires an intentional act.  *See* NMSA §30-4-3 ("False Imprisonment consists of *intentionally* confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so") (emphasis added). Thus, to the extent that Plaintiff would request permission to amend her complaint to add claims of assault, battery and false imprisonment committed by Mawhorter, such an amendment would be futile.  *Mountain View Pharmacy v. Abbott Lab*., 630 F.2d 1383, 1389 (10th Cir.1980) (a court may properly deny leave to amend if amendment would prove futile).

In an effort to overcome the hurdle of the intentional conduct requirement, Plaintiff argues that New Mexico drunk driving cases apply to this case.  Doc. 7 at 9 ("Like the decision to drive drunk, the decision to drive recklessly and dangerously at high speeds while engaging in a high speed car chase to evade law enforcement officers constitutes an intent to engage in unlawful conduct that invades the protected interests of others, and this intent provides sufficient grounds to treat the conduct as an intentional tort.").  In *California First Bank et al v. State of New Mexico et al*., the New Mexico Supreme Court imputed the requisite intent to commit

---

[4] New Mexico courts consider the elements of civil and criminal assault to be "essentially identical." *New Mexico v. Ortega*, 1992–NMCA–003, ¶ 12, 113 N.M. 437, 827 P.2d 152, 155 (1992).

battery to drunk drivers. 1990-NMSC-106, 111 N.M. 64, 801 P.2d 646. In a recent case, *Milliron v. Cty of San Juan,* the New Mexico Court of Appeals described *California First Bank* "and its progeny" as "exceptions to the general rule that both the crime and tort of battery require proof of intent." 384 P.3d at 1095. The Court of Appeals was also reluctant to extend the exception to a case where the person who was intoxicated was the pedestrian who was struck by a car, and not the driver. *See Milliron,* 384 P.3d at 1095 ("While the rationale of *California First Bank* . . . clearly applies to intoxicated drivers, it is inapplicable to the facts of the present case."). The court stated that it was "unwilling" to draw the conclusion that injury to the passing intoxicated motorist was a "substantially certain outcome" of the driver, who was sober. *Id.*

This Court is similarly unwilling to extend the exception to the requisite intent requirement to the facts in this case. Based on the analysis in *Milliron,* this Court finds that the line of New Mexico cases which impute intent to an intoxicated defendant should be limited to the particular exception of an intoxicated driver and should not be extended beyond that specific situation. The Complaint makes no allegations that Mawhorter was intoxicated, and the Court is unaware of any case which holds that a sober driver who refuses to pull over in response to a traffic stop and instead chooses to flee in high-speed flight, creates an inference that the driver has the requisite intent to commit a battery (or assault) on his passenger (or that he intends to falsely imprison the passenger). Intent can certainly be inferred on Mawhorter's part—but that intent is to evade capture by the police and not to intentionally touch or apply force to the passenger in a rude, insolent or angry manner, *or* to falsely imprison her. *See, e.g., Parrish v. City of Clovis,* 2015 WL 4380278 (Ct.App. 2015) (unpubl. opin.) ("gross negligence" while driving" is insufficient to establish requisite intent for tort of assault, and therefore no waiver of immunity under §41-4-12).

Therefore, the Court finds that Plaintiff has not alleged the commission of any one of the enumerated torts in §41-4-12 by a third person, and thus Plaintiff has not sufficiently alleged a claim under that provision in the Tort Claims Act.

B.  Constitutional Violation Alleged under Tort Claims Act

Plaintiff also contends that she has stated a claim for which sovereign immunity has been waived under §41-4-12 because the Defendant officers deprived Ms. Woods of her statutory rights and other constitutional rights pursuant to that provision. Plaintiff asserts a separate Fourteenth Amendment claim in Count I of the Complaint under a "danger creation" theory, but states in her response that this claim also serves as a basis for a waiver of immunity under §41-4 12.[5]

There are two reasons why Plaintiff's assertion of a constitutional claim is insufficient to allege a claim under §41-4-12. First, it is well-established that constitutional claims cannot be premised on negligent conduct. *See Sheets v. Salt lake City et al.*, 45 F.3d 1383, 1389 (10th Cir. 1995) ("it is sufficient if Plaintiff can prove that a Defendant *intentionally* committed the acts which resulted in the violation of Plaintiff's constitutional right") (emphasis added).[6] Here, Plaintiff unmistakably couches her Tort Claims Act claim as a negligence claim. *See Compl.,*¶¶ 32-38 (describing officer's "breach of duty" in engaging in an unnecessary and inherently

---

[5]  The Fourteenth Amendment claim in Count I is based on a danger-creation theory. Under a "danger creation" theory, a state may be liable for an individual's safety "if it created the danger that harmed the individual." *Uhllrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)); *DeShaney v.Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989).

[6] *Webber v. Mefford*, 43 F.3d 1340, 1342 (10th Cir. 1994) ("Simply put, negligent conduct by a government official that injures an individual's life, liberty, or property does not give rise to a Fourteenth Amendment violation actionable under §1983.") (citing *Daniels v. Williams*, 474 U.S. 327, 333 (1985)); *Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995) (allegations that a police officer acted negligently do not state a claim for a Fourteenth Amendment violation actionable under §1983); *Romero v. Otero*, 678 F.Supp. 1538, 1538 (D.N.M.) (protections of the due process clause are not triggered by a state official's negligent act causing unintended injury to life, liberty or property); *Stringer v. Dilger*, 313 F.2d 536, 540 (10th Cir. 1963) (§1983 liability is established if there is an intentional act which causes a deprivation).

9

dangerous high speed pursuit). Allegations of merely negligent conduct are incompatible with allegations of civil rights violations, in particular Fourteenth Amendment claims, which must be "predicated on reckless or intentionally injury-causing state action which 'shocks the conscience' of federal judges." *See Collins v City of Harker Heights, Tex.,* 503 U.S. 115 (1992); *Sutton v. Utah State Sch. For the Deaf & Blind,* 173 F.3d 1226, 1238 (10th Cir. 1999). Plaintiff therefore cannot rely on the same negligent conduct that is alleged for claims under the Tort Claims Act to also serve as the basis for her Fourteenth Amendment claim.

Second (and more critically), as a matter of law, a plaintiff cannot allege a constitutional violation under the Tort Claims Act to assert a claim under that Act without also asserting an enumerated tort. New Mexico courts have "consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act." *Barreras v. State of New Mexico Corrections Dept*., 62 P.3d 770, 776, 133 N.M. 313, 319 (N.M.App.,2002) (citations omitted). This means that Plaintiff may not seek damages from the City for violation of state constitutional rights unless immunity is waived under the Tort Claims Act based on an express waiver of immunity. *Chavez v. City of Albuquerque*, 952 P.2d 474, 477, 124 N.M. 479, 482 (N.M.App., 1997); *Lucero v. Salazar*, 117 N.M. 803, 804 (Ct.App. 1994), *cert denied*, 117 N.M. 802 (1994) ("Waiver of immunity based on such constitutional grounds would emasculate the immunity preserved in the Tort Claims Act."); *Ford v. New Mexico Dept. of Public Safety*, 891 P.2d 546, 553, 119 N.M. 405, 412 (N.M.App.,1994) ("absent a waiver of immunity under the Tort Claims Act, a person may not sue the state for damages for violation of a state constitutional right") (citing *Begay v. State,* 104 N.M. 483, 488, 723 P.2d 252, 257 (Ct.App.1985)).

C. <u>Statutory Violation</u>

Plaintiff also contends that, notwithstanding allegations of mere negligence, Defendants waived their immunity under the Tort Claims Act because they have also violated the Law Enforcement Safe Pursuit Act, NMSA 1978 §§29-20-1 to 29-20-4 ("LESPA") which is a statutory right, when the Defendant officers engaged in the pursuit at issue and continued in the pursuit despite Mawhorter's reckless and dangerous driving. The LESPA statute requires the "chief law enforcement officer" of "every state, county and municipal law enforcement agency" to "establish and enforce" a "written policy" governing the conduct of law enforcement employees "who are involved in high speed pursuits" and sets forth various "minimum" standards that must be included in such a written policy.

The statute does not prohibit high-speed pursuits, but rather requires the establishment of pursuit policies regarding, for example, whether and when to initiate high-speed pursuits and whether to continue one. Plaintiff does not allege that there is no policy or that the policy is deficient in some manner. In fact, as Defendants point out and Plaintiff does not dispute, Defendant Department of Public Safety has promulgated a written policy governing the conduct of its officers involved in high-speed vehicle pursuits, and this policy is posted on the internet. *See* DPS Policy No. OPR: 08 ("Vehicular Pursuits"), issued 01/01/1991, as revised 03/11/2013, *and see* §4.0(C) of OPR: 08 (Law Enforcement Safe Pursuit Act referenced in policy). However, Plaintiff has failed to assert a claim based on the deprivation of a statutory right under §41-4-12 because she does not allege how the Defendant officers violated any of the policy provisions. Moreover, the Court can reasonably assume that, just as individuals cannot bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution absent an express waiver of immunity under the Tort Claims Act, a plaintiff cannot assert a statutory violation without the

11

same express waiver of immunity. *See Barreras,* 133 N.M. at 319. Thus, Plaintiff cannot rely on LESPA on its own to provide a waiver of immunity for her negligence claim under §41-4-12.

As a corollary matter, the Court also questions whether LESPA can provide a basis for a private right of action in the first place. At one point under New Mexico law, one of the essential elements of the crime of aggravated fleeing included the requirement that the pursuit was "in accordance with" the provisions of LESPA. *See State v. Padilla,* 140 N.M. 333 (Ct.App. 2006). However, the New Mexico Supreme Court reconsidered the issue and has held that a police officer's compliance with the provisions in LESPA is not an essential element of the crime of aggravated fleeing. *See State v. Padilla,* 143 N.M. 310, 317 (2008) (reversing Court of Appeals decision). Except for these cases, the Court has found no case law involving a private right of action in a civil case based on an alleged violation of LESPA. *Cmp., e.g., Milliron v. County of San Juan*, 384 P.3d 1089, 1098 (N.M.App., 2016) (failure to allege facts sufficient to establish waiver of government immunity granted by §41-4-4(A) of Tort Claims Act where there was no breach of statutory duty of either New Mexico Detoxification Reform Act or Motor Vehicle Code provisions). Neither party has addressed this issue, but whether or not LESPA allows a private right of action, Plaintiff has failed to allege any viable claim under the statute and has also failed to base any claim on an express waiver of immunity under §41-4-12 or any other provision of the Tort Claims Act.

## II.     Counts III, IV and V

Next, Defendants contend that Counts II, IV and V are in reality a single claim of alleged negligence which proximately caused the wrongful death of Ms. Woods rather than three separate claims and as a result, Plaintiff's failure to sufficiently allege a claim under Count II

also dooms the other claims as well. The Court agrees with this argument, and notes that Plaintiff offers nothing by way of response to the dismissal of these other claims.

    A.    <u>Negligent Hiring, Training, Supervision and Retention (Count III)</u>

As mentioned previously, a cause of action of negligent hiring, training, supervision and retention can proceed only if the alleged negligence leads to the commission of one of the torts enumerated in the Tort Claims Act. *Santillo v. NM Dept of Public Safety*, 143 NM 84 (NM App. 2007), citing *Ortiz v. N.M. State Police*, 112 N.M. 249, 251, 814 P.2d 117, 119 (Ct.App.1991).

    Plaintiff bases her claim in Count II solely on §41-4-12. The Court has already determined that Plaintiff has not sufficiently alleged a claim under the Tort Claims Act because the Complaint does not allege the commission of any one of the enumerated torts in §41-4-12 by Defendant officers or by a third person, nor can any of these torts be plausibly alleged under the facts in this case. Therefore, Count III will be dismissed.

    B.    <u>Respondeat Superior (Count IV)</u>

Respondeat superior is a doctrine whereby a government entity is responsible for the torts of its employees for which immunity is waived to a similar extent as a private employer would be under the doctrine of respondeat superior. *Lopez, Sr. v. Las Cruces Police Dept.,* 139 N.M. 730 (N.M. App. 2006); *Vigil v. State Auditor's Office,* 138 N.M. 63 (2005) (state's liability for its employees' negligence under the Tort Claims Act is similar to that of a private employer under the doctrine of respondeat superior). Thus, Count IV can survive dismissal only if is predicated on a claim asserted under the Tort Claims Act. Since Plaintiff has failed to allege the commission of one of the enumerated intentional torts in §41-4-12, there can be no claim for respondeat superior. Therefore, Count IV will be dismissed as well.

    C.    <u>New Mexico Wrongful Death Statute (Count V)</u>

Defendants contend that in order to bring a wrongful death action, Plaintiff must identify one of the statutorily-enumerated, intentional torts specified in §41-4-12. The Tort Claims Act governs the manner in which tort actions can be brought against governmental entities and public employees, including wrongful death actions. *Estate of Lajeuenesse ex rel. Boswell v. Board of Regents of University of New Mexico*, 2013-NMCA-004, 292 P.3d 485, 488 (Ct.App. 2012) (court "must look to the [Tort Claims Act] to determine the availability and extent of a wrongful death action").

Plaintiff's claim under New Mexico's Wrongful Death Act, NMSA 1978, §41-2-1, must therefore be viewed through the language of the Tort Claims Act. *See* §41-4-17 ("The Tort Claims Act shall be the *exclusive* remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act. . . .") (emphasis added). In other words, New Mexico's Wrongful Death Act does not provide an independent basis for suit because the Tort Claims Act provides the appropriate vehicle for wrongful death claims against governmental entities and employees. *See* 41-4-12 (waiving immunity for "liability for personal injury, bodily injury, *wrongful death* or property damage . . ."). The Tort Claims Act also sets out specific notice requirements that are applicable only to wrongful death actions against governmental entities. *See* §41-4-16(C) (describing notice required for wrongful death claims). In short, in asserting a claim for the wrongful death of Ms. Woods, Plaintiff is required to bring the claim under the Tort Claims Act and not the New Mexico Wrongful Death Act because she is suing a governmental entity and government employees. This also means that in order to proceed with a wrongful death claim under the Tort Claims Act, Plaintiff is still required to identify one of the statutorily-enumerated intentional torts specified in §41-4-12. Because Plaintiff has failed to do so, her wrongful death claim in Count V must be dismissed.

C.  Punitive Damages

Defendants also move for the dismissal of punitive damages in Counts III and V.  *See* Compl., ¶¶55 and 70.  In light of the Court's dismissal of the underlying claims in Counts III and V, the Court need not address this issue.

**CONCLUSION**

In sum, this Court finds and concludes that Defendants are entitled to dismissal of Count II because Plaintiff has not alleged the commission of any one of the enumerated torts in §41-4-12 that waive sovereign immunity, either by Defendants or by a third person.  The Court also finds and concludes that Plaintiff has not alleged a claim under the Tort Claims Act in asserting a constitutional or statutory claim because she has not also alleged a claim for which immunity has been waived under the Tort Claims Act, as required under New Mexico law, sufficient to withstand the *Iqbal-Twombly* standard.

The Court finds and concludes that Defendants are entitled to the dismissal of Count III (Negligent Hiring, Training, Supervision and Retention), Count IV (Respondeat Superior) and Count V (wrongful death under the New Mexico Wrongful Death Act).  The claim of Negligent Hiring, Training, Supervision and Retention cannot stand because Plaintiff has not alleged that Defendant officers caused the commission of an enumerated tort by a third person.  A claim of respondeat superior is derivative of a tort claim under the Tort Claims Act, which Plaintiff has failed to allege.  Finally, Plaintiff's wrongful death claim must be governed by the Tort Claims Act and not the New Mexico Wrongful Death Act because Plaintiff is suing a governmental entity and government employees and has failed to sufficiently allege any of the statutorily-enumerated torts required state a claim for wrongful death under the Tort Claims Act.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss Counts II, III, IV and V **(Doc. 6)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order. Counts II, III, IV and V are hereby DISMISSED WITH PREJUDICE. Defendants' request for dismissal of Plaintiff's request for punitive damages is denied as moot in light of the Court's rulings on the underlying claims.

$$_____ /S/_____$$
WILLIAM P. JOHNSON
UNITED STATES DISTRICT JUDGE