IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTONIA ROYBAL-MACK,
as Personal Representative of the
Wrongful Death Estate of
KORI LYNN WOODS,

      Plaintiff,

vs.                                              No. 17-CV-552-WJ-KK

NEW MEXICO DEPARTMENT OF
PUBLIC SAFETY, OFFICER
MARK QUINTANA and OFFICER
DIEGO MENDOZA, individually
and in their official capacities, and
JOHN and JANE DOES #1-10,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT

THIS MATTER comes before the Court upon Plaintiff's Motion to Amend Complaint, filed September 6, 2017 (**Doc. 27**). Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiff's motion is not well-taken and, therefore, is denied.

### BACKGROUND

Plaintiff's claims arise from the Defendant Officer's high-speed pursuit of a vehicle operated by Kyle Mawhorter ("Mawhorter"), in which Kori Lynn Woods was a passenger and which resulted in a single-vehicle collision killing Ms. Woods.

The facts in the Complaint are summed up in the Joint Status Report (Doc. 13). They bear repeating for purposes of context. In November 2016 near Clovis, New Mexico, State Police Officer Quintana initiated a traffic stop for speeding on a vehicle operated by Mawhorter in which Ms. Woods was riding as a passenger. Officer Quintana activated his patrol unit's emergency equipment directing Mawhorter to stop the vehicle on the shoulder of the highway. Mawhorter failed to stop and Officer Quintana pursued Mawhorter (at speeds, according to Defendants, close to 100 m.p.h.) along US 70 traveling northbound. Officer Mendoza of the New Mexico State Police was also patrolling that stretch of the highway and was dispatched to assist Officer Quintana. Both police cruisers were using their overhead emergency lights and sirens, and recorded the chase on their dash-cam videos. Defendants' version of events is that at one point Mawhorter deliberately crossed into the southbound lanes of US 70 and began traveling northbound at speeds of 90-100 mph against oncoming traffic, causing the southbound vehicles to swerve in order to avoid being hit. The officers therefore decided to continue their pursuit of the vehicle for public safety reasons.

About five minutes into the pursuit, Officer Mendoza attempted a Pursuit Intervention Technique ("PIT") maneuver on Mawhorter's vehicle. The first PIT maneuver was unsuccessful, but the second one brought Mawhorter's vehicle to a stop. However, after stopping, Mawhorter reversed his car and began traveling northbound on US 70 again. According to Plaintiff's version, Officer Mendoza advised dispatch at this time that there was a female passenger (Ms. Woods) in Mawhorter's vehicle. Officer Quintana attempted a third unsuccessful PIT maneuver when Mawhorter began traveling west on Brady Avenue in Clovis, N.M. The pursuit continued 12 miles on US 70 northbound until Mawhorter lost control of his vehicle crashing into a metal fence at the intersection of W. Brady Ave. and S. Hull St. in Clovis. Mawhorter fled the vehicle

on foot but was eventually found in a field and ultimately pled guilty to various felony charges stemming from the accident. Ms. Woods was pronounced dead at the scene.

On March 31, 2017, Plaintiff as the personal representative of Ms. Woods' estate, filed a five-count complaint in the Second Judicial District Court in Bernalillo County, asserting the following civil rights and state law tort claims:

Count I – Civil rights violations under §1983 (Fourth and Fourteenth Amendments);[1]

Count II – Violations of the New Mexico Tort Claims Act, NMSA 1978 §41-4-12 and under the New Mexico Law Enforcement Safe Pursuit Act, NMSA 1978, §29-20-1;

Count III – Negligent hiring, Training, Supervision and Retention;

Count IV – Respondeat Superior; and

Count V – Breach of duty under the New Mexico Wrongful Death Act, NMSA 1978, §41-2-1 et seq.

Defendants removed the case to federal court on May 15, 2017 and filed a motion seeking dismissal of the state claims asserted in Counts II, III, IV and V, contending that Counts II, III, IV and V of the Complaint were redundant and attempted in various ways to state a claim for negligence resulting in the wrongful death of the decedent pursuant to NMSA §41-4-12 of the New Mexico Tort Claims Act ("Tort Claims Act").

The Court granted Defendant's motion, finding that Plaintiffs' claims asserted under §41-4-12 of the Tort Claims Act were premised on negligent conduct, which is insufficient for a waiver of immunity under the Tort Claims Act. With respect to the torts enumerated in §41-4-12, allegations of negligence are appropriate only to the extent that a law enforcement officer's negligence is alleged to have caused a third party (such as Mawhorter in this case) to commit one of the specified *intentional* torts. Doc. 18 at 6-7. The Court noted that the allegations in the

---

[1] Defendant has filed a motion for summary judgment as to Count I (Doc. 19), which is pending for ruling by the Court.

complaint were framed in terms of negligence and did not assert any of those enumerated torts in §41-4-12. Doc. 18 at 6.

In responding to Defendants' motion to dismiss, Plaintiff had sought the Court's permission to amend the complaint in the event the Court favored Defendants' arguments. However, the Court concluded that such amendment would be futile because even assuming the facts to be true, they did not plausibly lend themselves to acts of assault, battery or false imprisonment by Mawhorter because those torts require intentional acts. Doc. 18 at 7. All of Plaintiff's state law claims were dismissed in the Court's Memorandum Opinion and Order. *Id.* at 16.

## DISCUSSION

Plaintiff's motion is self-styled as a motion to amend, although Plaintiff also expressly includes a request that the Court modify its previous rulings on her state law claims. Since Plaintiffs' principal objective is to seek a modification of the Court's previous Memorandum Opinion and Order (Doc. 18), and amendment would be futile without modification of those rulings, the Court will first address motion to revise or reconsider.

**I.**     **Whether the Court's Previous Findings Should be Modified**

Plaintiff asks that the Court revise its conclusion that an amended complaint on these claims would be futile, which would require the Court to modify its previous rulings.

Rule 54(b) of the Federal Rules of Civil Procedure grants a district court the discretion to revise interlocutory orders at any time prior to entry of a final judgment. *See Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1148 (10th Cir. 1991). When evaluating whether to reconsider an interlocutory order pursuant to Rule 54(b), courts apply the same legal standard as used for a motion to alter or amend a judgment under Rule 59(e). *See Tomlinson v. Combined Underwriters*

*Life Ins. Co.*, 684 F. Supp. 2d 1296, 1299 (N.D. Okla. 2010); *Sump v. Fingerhut, Inc.*, 208 F.R.D. 324, 326-27 (D. Kan. 2002).

Under Rule 59(e), a motion to reconsider is warranted in the event of: (1) an intervening change in controlling law; (2) new evidence previously unavailable; or (3) the need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion to reconsider is also "appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id*.

The primary change in the proposed amended complaint, attached as Exhibit A to the motion, is the addition of the word "intentional" to several of the paragraphs in order to describe Mawhorter's conduct with regard to his allegedly reckless driving. *See, e.g.,* ¶¶ 27, 29, 30 & 56. As mentioned in the Court's previously filed opinion, the assault and battery statutes require intentional acts, not negligence. An assault under New Mexico law requires an act, threat, or menacing conduct which causes the plaintiff to reasonably believe she is in danger of receiving an immediate battery. *See* N.M.S.A. § 30-3-1; *see also State v. Ortega*, 113 N.M. 437 (N.M. Ct. App. 1992). A battery under New Mexico law requires an unlawful, harmful, intentional, or offensive touching of another. *Id*.; *see also Chavez v. Thomas & Betts Corp*., 396 F.3d 1088 (10th Cir. 2005). The intent required to commit battery extends only to the physical touching at issue and not to the resulting harm. *Milliron v. County of San Juan*, 384 P.3d 1089, 1095 (N.M.App., 2016). Similarly, false imprisonment also requires an intentional act. *See* NMSA §30-4-3.

A. Application of *California First Bank* Case is Not Appropriate

In the Memorandum Opinion and Order dismissing Plaintiff's state claims, the Court cited to *California First Bank et al. v. State of New Mexico et al.,* which imputed the requisite

5

intent to commit battery to drunk drivers, 111 N.M. 64 (1990), but this Court declined to extend the analysis in *California First Bank* to this case. Some further discussion of *California First Bank* may be worthwhile in order to clarify the Court's ruling.

In *California First Bank*, the New Mexico Supreme Court addressed the waiver of immunity under the Tort Claims Act in a situation where officers had failed to take reasonable steps to pursue an individual *despite knowing and observing* that the individual was driving while intoxicated and posed a threat to the safety of others. Under the facts of that case, Gallup police officers at the time followed a policy promulgated by the City of Gallup and McKinley County ("city" and "county") not to interfere with drinking activity inside "Indian Bars." Officers were instructed not to enter these bars, and not to apprehend or arrest persons driving while under the influence of alcohol. In that case, officers observed Harrison Shorty ("Shorty") leaving Eddie's Bar and saw him fire several gun shots outside the bar, but they failed to apprehend him. Not long after the shooting incident, Shorty left the bar and drove north on U.S. Road 666, crossed the center line of the highway in his truck, and collided with a vehicle driven by Laurence McKeen who was on vacation with his wife and daughters. Mr. McKeen, his wife and one of the daughters were killed and the second daughter was seriously injured.

What drove the New Mexico Supreme Court's analysis and reasoning in *California First Bank* case was the policy of non-enforcement regarding liquor control and drunk driving laws. The New Mexico Court of Appeals had held that the county could be vicariously liable under respondeat superior if it could be proven that the county had immediate supervisory authority over the officers, and if the officers' negligence caused a battery. 111 N.M. at 67. However, the Supreme Court's holding in *California First Bank* turned on finding a waiver of immunity in the Tort Claims Act, §41-4-12 under New Mexico law based on a state statute, NMSA 1978, §29-1-

1, which imposes a duty on law enforcement officers to investigate all violations of criminal laws. *Id.* at 74. Thus, the court did not need to reach the issue of whether injury caused by an intoxicated person could be considered a battery. Nevertheless, in a lengthy footnote, the Supreme Court suggested that the allegations concerning the traffic accident in that case "do not necessarily constitute a battery" and found that the question would be for a jury to decide. 111 N.M. at 74, n.6 ("We believe Shorty's intoxication would be material to a jury determination of whether a battery was committed in this case."). The court noted that while the plaintiff had to show that Shorty "intended to cause contact," the term "intent" also denotes that the actor believes that the consequences are substantially certain to result from the action taken." The court went further to state that the decision to operate a motor vehicle on a public highway while intoxicated "constituted an intent to engage in unlawful conduct that invades the protected interests of others, and this intent provides sufficient grounds to treat the conduct as an intentional tort."[2]

Plaintiff insists that the reasoning in the *California First Bank* case should be applied here, comparing Mawhorter, a fleeing felon with Shorty, the intoxicated patron in the *California First Bank* case, and argues that both drivers "intended" to drive and intended to do so in a way that was "substantially certain" to harm others.

This Court's initial ruling still holds, and for the same reasons. The language in *California First Bank's* footnote 6 focused solely on intent and battery in the particular context of intoxicated drivers—that is, how an intoxicated individual's "conscious decision to drive" should be examined in relation to the required "intent" in a battery claim. 111 N.M. at 74 & n.6

---

[2] The Court reads this language to mean that the jury would need to determine whether the intoxicated individual in fact made the decision to operate the motor vehicle in the first place. Otherwise, it is difficult to reconcile the language in the footnote relegating the matter to a jury while at the same time finding that the conduct constitutes an intentional tort.

7

(" . . . evidence of the intoxicated driver's lack of subjective appreciation of the magnitude or nature of the risk created is not controlling . . . .). As the Court noted in its previous opinion, the New Mexico Court of Appeals was reluctant to extend the exception in *California First Bank* to a case where the person who was intoxicated was the pedestrian who was struck by a car, and not the driver. *Milliron v. Cty of San Jan,* 2016-NMCA-096, 384 P.3d 1089, 1095. There, the court stated that it was "unwilling" to draw the conclusion that injury to the passing intoxicated motorist was a "substantially certain outcome" of the driver, who was sober.

In another New Mexico case involving a drunk driver, *Blea v. City of Espanola,* police officers and the City of Espanola were sued when an intoxicated motorist was detained but released by the officers. 1994-NMCA-008, §15, 117 N.M. 217. The driver was obviously extremely intoxicated and impaired, but the officers who stopped him allowed him to continue driving on. The driver consumed more alcohol after the stop and subsequently struck the decedent's car at high speed. The court of appeals found that plaintiffs' allegations of intoxication and driving were sufficient to require the court to follow the "dicta" in footnote 6 in the *California First Bank* case.

Here, it is not disputed that Mawhorter was not driving under the influence of any substance at the time he was evading the police, yet Plaintiff urges the Court to find that Mawhorter's reckless driving forms the basis for allegations of assault, battery and false imprisonment. Plaintiff points to Mawhorter's deposition statements that Ms. Woods was "freaking out," had a panic attack" and wanted Mawhorter to stop the car.[3] Mawhorter stated

---

[3] Both parties refer to Mawhorter's deposition statements, attached to Plaintiff's Response to Defendants' Motion for Summary Judgment as to Count I Based on Qualified Immunity (Doc. 19), Ex. D, which is pending before the Court. Specific references to these deposition excerpts can be found in the briefs. In this motion, Plaintiff seeks reconsideration of the Court's rulings on Defendants' Motion to Dismiss, and so facts that are taken from exhibits to a summary judgment motion are not actually appropriate here. However, the Court considers these facts because both parties cite to Mawhorter's deposition, and also because including these statements demonstrates the futility of allowing Plaintiff to amend the complaint.

that the car was "going way too fast" to stop. However, Defendants cite to other portions of the deposition, noting that Mawhorter decided to flee rather than comply with the officers' attempts to pull him over because he knew the truck was stolen "and I didn't want to go to jail." *See* Doc. 35 at 9. Mawhorter "kept saying it'll be okay" when Ms. Woods wanted him to stop the car. Mawhorter also said that Ms. Woods had been smoking marijuana while they drove and that her marijuana stash was in the truck glovebox. *Id.* Mawhorter himself was going through heroin withdrawal while he was driving the car and it is undisputed that he was not under the influence of any substance at the time. *Id.* at 8. It is therefore clear, based on the allegations in the complaint as well as statements made in his deposition, that Mawhorter's overriding intention was to avoid apprehension by the officers, and not to commit a battery on Ms. Woods.

*California First Bank* carved out a potential exception to the intent requirement for a battery claim where the defendant was driving while intoxicated, but it did not alter the definitive law regarding the elements of a battery claim: a plaintiff must still show there was an intent to harm, even where the harm is considered to be "substantially certain." The Court finds no legal or factual basis to go beyond the factual context of *California First Bank* and extend the reasoning in footnote 6 to this case. There is no basis for reading *California First Bank* to suggest that the New Mexico Supreme Court announced a new flexibility for the intent requirement in a battery claim that would apply to all fact scenarios in the future. Doing so would allow an exception to become the rule for virtually anyone who was driving recklessly, even if they were not intoxicated and whether or not they were fleeing from police officers. Defendants also point out that extending *California First Bank* to this case could pose a dilemma for police officers who have a duty to investigate crimes (which could lead to a police chase), but who could also be reluctant to continue a pursuit where they would face liability if the driver

9

injured someone as a result of the chase. At the same time, if the officers abandon the chase after a driver who later turns out to be intoxicated, the officers would face liability for *not* stopping him. This truly presents a "catch-22" situationThe objective of the New Mexico Supreme Court in footnote 6 of *California First Bank* was to foreclose the ability of drunk drivers to circumvent the "intent" requirement, and the court made it clear that merely the decision to get behind the wheel of a vehicle while intoxicated could be enough to satisfy that requirement. In other words, drunk drivers would no longer get a "pass" on the "intent" element for a battery claim. Since there is no allegation or evidence that Mawhorter was impaired, there is no reason to extend *California First Bank* to this case. However, the Supreme Court also relied on black-letter law defining "intent" as used in a battery claim, as stated in the Restatement (Second) of Torts, §8A (1965). Plaintiff focuses on that language to argue that the proposed amended complaint sufficiently alleges an enumerated tort in §41-4-12, because Mawhorter intended to drive in a manner that was "substantially certain" to harm others:

> The word "intent" is used . . . to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.

Restatement (Second) of Torts, §8(A) (1965). The comments further define what "substantial certainty" is, and explains when conduct is no longer be considered "substantial certainty:

> All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. **As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness.** As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence,

Restatement (Second) of Torts § 8A (1965) (cmt.b) (emphasis added). In other words, recklessness is *not* "substantial certainty" and by extension, it is not "intent." As mentioned previously, the proposed amended complaint adds the word "intentionally" to several of the allegations, ostensibly for the purpose of turning Mawhorter's conduct into an intentional tort, for example:

> During the pursuit, Mawhorter **intentionally drove erratically and in a hazardous fashion**, driving well above the speed limit and driving northbound in the southbound lane of traffic.

Doc. 27-1, ¶29 (emphasis added). Mawhorter cannot "intentionally" drive "recklessly" because both kinds of conduct are mutually exclusive under the applicable law in that they cannot both occur at the same time. Mawhorter *intended* to flee the officers chasing him, but he drove *recklessly* in order to accomplish this. Thus, the proposed amended complaint cannot be read to state plausible claims of assault, battery and false imprisonment—all of which are intentional torts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (*"Iqbal"*) (to survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face).

For all of these reasons, the Court denies Plaintiff's motion to reconsider. The allegations underlying the facts in this case do not meet the elements of assault, battery or false imprisonment. Also, the Court cannot square the reasoning of the *California First Bank* case with this case and so the exception concerning the intent requirement for battery will not be extended to this case.

B.  Certification to State Court is Not Warranted

Plaintiff requests that the Court certify the issue of whether *California First Bank* applies here to the New Mexico Supreme Court.

Whether to certify a question of state law to the state supreme court is within the discretion of the federal court. *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974); *Holler v. United States*, 724 F.2d 104, 105 06 (10th Cir.1983). Certification is particularly appropriate where the legal question at issue is novel and the applicable state law is unsettled. *Id*. However, certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law. *Armijo v. Ex Cam, Inc*., 843 F.2d 406 (10th Cir. 1988). Certification is not to be "routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo,* 843 F.2d at 407. The United States Supreme Court and Tenth Circuit Court of Appeals have instructed that:

> In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment.

*Copier By & Through Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) (citing *Meredith v. City of Winter Haven,* 320 U.S. 228, 234(1943)). Thus, it is within this Court's authority to decide questions of state law, and the Court does not consider the issues in this case to rise to the level of "exceptional" issues justifying certification to the New Mexico Supreme Court. Accordingly, Plaintiff's request to certify this issue to the New Mexico Supreme Court is denied.

## II. Whether Amendment is Proper

Under Fed.R.Civ.P. 15(a)(2), the decision about whether to provide a party leave to amend pleadings "is within the discretion of the trial court." *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1204 (10th Cir. 2006) (quotations and citation omitted). Although leave to amend is generally freely granted, it will not be permitted where the proposed amendment will be futile, or

where the request is untimely and unduly prejudicial to the opposing part. *Castleglen, Inc., et al. v. R.T.C.*, 984 F.2d 1571 (10th Cir. 1993); *see Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996). Futility might warrant denial of leave to amend if the amended complaint would be subject to dismissal. *Mountain View Pharmacy v. Abbott Lab.*, 630 F.2d 1383, 1389 (10th Cir.1980); *Steinert v. The Winn Group, Inc.*, 190 F.R.D. 680, 682 (D.Kan.,2000).

As mentioned above, Plaintiff's request to amend the complaint is dependent on the Court's modification of its prior rulings regarding Plaintiff's state law claims under the Tort Claims Act. This is not a proper foundation for a motion to amend. *See Torre v. Federated Mutual Ins. Co.*, 862 F.Supp. 299, 300-01 (D.Kan. 1994) (citation omitted), aff'd 124 F.3d 218 (10th Cir. 1997) (A motion to alter or amend may not be used as a vehicle for the losing party to rehash arguments previously considered and rejected by the district court.). In the foregoing discussion, the Court concluded that Plaintiff has not presented any reason to modify its previous rulings regarding Plaintiff's state law claims. Adding the word "intentional" to the allegations in the complaint to describe Mawhorter's *driving* does not change the required elements for assault, battery or false imprisonment with regard to Mawhorter's conduct toward Ms. Woods, nor does it persuade the Court that *California First Bank* should apply here. Therefore, Plaintiff's Motion to Amend the Complaint is denied.

## CONCLUSION

In sum, the Court finds and concludes that Plaintiff has not presented any legal or factual basis to modify its previous rulings which resulted in a dismissal of Plaintiff's state law claims brought under the Tort Claims Act. There has been no change in the controlling law, no new evidence that was previously unavailable, and no clear error committed by the Court.

13

The Court also finds and concludes that the reasoning of the *California First Bank* should not be applied or extended to the facts and issues in this case and that there is no reason to certify this question to the state supreme court.

Finally, the Court finds and concludes that Plaintiff's request to amend the complaint is denied because of futility: even with the amendments, Plaintiff cannot state claims of assault, battery or false imprisonment under the controlling law.

**THEREFORE, IT IS ORDERED** that Plaintiff's Motion to Amend Complaint (**Doc. 27**) is hereby DENIED, and Plaintiff's request that the Court reconsider its previous rulings in its dismissal of Plaintiff's state law claims (Doc. 18) is also DENIED.

_____
UNITED STATES DISTRICT JUDGE